UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CINDY T. MASSEY,<br><br>             Plaintiff,<br><br>      v.<br><br>BAC HOME LOANS SERVICING LP, et al.,<br><br>             Defendants. | CASE NO. C12-1314JLR<br><br>ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT |

## I. INTRODUCTION

Before the court are Defendant Bank of America, N.A.'s (Bank of America) motion for summary judgment (BANA Mot. (Dkt. # 54)) and Defendants Federal Home Mortgage Corporation ("Freddie Mac"), Mortgage Electronic Registration Systems, Inc., and MERSCORP Holdings Inc.'s (together, "MERS") motion for summary judgment (MERS Mot. (Dkt. # 59)). Plaintiff Cindy T. Massey asserts a claim under the

ORDER- 1

Washington Consumer Protection Act against Defendants in connection with nonjudicial foreclosure proceedings on her property. (Am. Compl. (Dkt. # 29).) Having considered the submissions of the parties, the balance of the record, the relevant law, and no party having requested oral argument, the court GRANTS Defendants' motions for summary judgment.

## II. FACTS

The following facts are undisputed. On June 12, 2008, Ms. Massey executed a promissory note ("the Note") to obtain a $357,200.00 mortgage loan ("the Loan") from Countrywide Bank, FSB ("Countrywide"). (*See* Lamas Dec. (Dkt. # 56) Ex. A (Note).) The Deed of Trust securing the loan identifies Countrywide Bank as the lender, LS Title of Washington as the Trustee, and MERS as the beneficiary "acting solely as a nominee of the Lender and Lender's successors and assigns." (*See* Lamas Dec. Ex. B (Deed).) The Deed of Trust encumbers Ms. Massey's property located at 28541 NE 151st Street, Duvall, WA 98019 ("the Property"). (Note at 1.) The loan was subsequently sold to Freddie Mac. (Am. Compl. ¶ 3.16; *id.* Ex. 4 (BANA Letter).) On December 1, 2010, MERS recorded an Assignment of Deed of Trust indicating that BAC Home Loans was the new beneficiary under the Deed of Trust. (Lamas Dec. Ex. E (Assignment).) On December 1, 2010, BAC Home Loans appointed Northwest Trustee Services, Inc. ("Northwest Trustee") as successor trustee. (Lamas Dec. Ex. F. (Appointment).)

Ms. Massey defaulted on her loan in July of 2010. (Massey Dep. (Dkt. 49-9) at 30); *see also* Lamas Dec. Ex. D (Loan History).) She has not made any payments since that time. (*Id.*) On April 25, 2011, Northwest Trustee recorded a Notice of Trustee's

Sale. (Elkins Dec. (Dkt. # 63-1) Ex. H.) This sale was postponed due to Ms. Massey's bankruptcy filing. (Resp. (Dkt. # 63) at 4; MERS Mot. at 5.) On May 25, 2012, Northwest Trustee recorded an Amended Notice of Trustee's Sale indicating that Ms. Massey owed over $55,000 on the Loan and scheduling a sale of the Property. (Lamas Dec. Ex. G.) That sale was discontinued pending resolution of this action. (Lamas Dec. ¶ 18.)

Ms. Massey filed this action on July 5, 2012, alleging numerous statutory and common law claims against Defendants. (*See* Compl. (Dkt. #1-1).) After two rounds of motions to dismiss, all that remains to be adjudicated is a single claim under the Washington Consumer Protection Act ("CPA"). (*See* 10/26/12 Order (Dkt. # 27); Am. Compl.; 2/13/13 Order (Dkt. # 37).) The court previously granted summary judgment in favor of Defendant Northwest Trustee on the CPA claim. (*See* Dkt. ## 52, 62.) Defendant Bank of America[1] now brings a motion for summary judgment on the CPA claim. (*See generally* BANA Mot.) Defendants Freddie Mac and MERS, together, also bring a separate motion for summary judgment. (*See generally* MERS Mot.)

### III.   ANALYSIS

**A.   Summary Judgment Standard**

Federal Rule of Civil Procedure 56 permits a court to grant summary judgment where the moving party demonstrates (1) the absence of a genuine issue of material fact and (2) entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S.

---

[1] Bank of America is successor by merger to Countrywide and to named defendant BAC Home Loans Servicing, LP ("BAC Home Loans"). (Lamas Dec. ¶¶ 6-7.) For simplicity, the court refers to these three entities as "Bank of America" for the remainder of this order.

317, 322 (1986); *see also Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007). The moving party bears the initial burden of production of showing an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party does not bear the ultimate burden of persuasion at trial, it can show an absence of issue of material fact in two ways: (1) by producing evidence negating an essential element of the nonmoving party's case, or, (2) showing that the nonmoving party lacks evidence of an essential element of its claim or defense. *Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000).

If the moving party meets its burden of production, the burden shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial. *Celotex*, 477 U.S. at 324. The "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In determining whether the factfinder could reasonably find in the non-moving party's favor, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods, Inc.*, 530 U.S. 133, 150 (2000). However, a jury "is permitted to draw only those inferences of which the evidence is reasonably susceptible; it may not resort to speculation." *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978). If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, summary judgment for the moving party is proper. *Nissan Fire*, 210 F.3d at 1106.

**B.     CPA**

To prevail on a CPA claim, a plaintiff must prove (1) an unfair or deceptive act or practice; (2) that occurs in trade or commerce; (3) an impact on the public interest; (4) injury to the plaintiff in his or her business or property; and (5) a causal link between the unfair or deceptive act and the injury suffered. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 535 (Wash. 1986). Failure to establish any one of these elements is fatal to a plaintiff's claim. *Id.* at 793. When parties do not dispute that particular conduct occurred, the question of whether that conduct constitutes a CPA violation is a question of law. *Leingang v. Pierce Cnty. Med. Bureau, Inc.*, 930 P.2d 288, 297 (Wash. 1997).

An unfair or deceptive act for the purposes of the CPA is "a per se violation of statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of public interest." *Klem v. Washington Mut. Bank*, 295 P.3d 1179, 1187 (Wash. 2013). Ms. Massey advances several theories as to how Bank of America and MERS engaged in deceptive acts under the CPA. The following sections address each theory in turn.

Ms. Massey, however, fails to identify any deceptive acts perpetrated by Freddie Mac. (*See* Am. Compl. ¶ 3.16, Ex. 4 (establishing only that Freddie Mac purchased and currently owns Plaintiff's loan).) For that reason alone, Ms. Massey's CPA claim against Freddie Mac fails. To the extent that Ms. Massey argues that Freddie Mac is complicit in the allegedly deceptive acts of Bank of America and MERS, her claim against Freddie Mac fails for the same reasons as her claims against Bank of America and MERS fail.

## C. Loan Origination

Ms. Massey argues that the terms of the Loan and Bank of America's conduct in originating the loan were unfair and deceptive. (Am. Compl. ¶¶ 3.3-3.8.) For example, she alleges that "[w]hen the loan was made the Lender did not follow proper underwriting procedures and due diligence" and that therefore "the loan was not what [she] expected and not suitable or affordable." (*Id.* ¶ 3.3) She specifically takes issue with the fact that the Loan included an interest-only term for the first 10 years of repayment, as well as a so-called "discount fee" of 1% which was allegedly not applied to reduce the interest rate of the loan. (*Id.*)

However, there is a four-year statute of limitations for claims brought under the CPA. RCW 19.86.120. Ms. Massey filed her original claim in state court on July 5, 2012. (*See* Compl.) But Ms. Massey signed the Deed of Trust and underlying Note on June 12, 2008. As such, claims relating to the Loan's terms and origination fall outside the CPA limitations period.

The discovery rule is of no use to Ms. Massey. "The discovery rule merely tolls the running of the statute of limitations until the plaintiff has knowledge of the 'facts' which give rise to the cause of action; it does not require knowledge of the existence of a legal cause of action itself." *Richardson v. Denend*, 795 P.2d 1192, 1194 (Wash. Ct. App. 1990). "A cause of action may accrue for purposes of the statute of limitations if a party *should have* discovered salient facts regarding a claim." *Green v. A.P.C.*, 960 P.2d 912, 915 (Wash. 1998) (emphasis in original).

ORDER- 6

Here, the terms of the Note—including the interest-only term and so-called "discount fee" of which she complains—were expressly disclosed to Ms. Massey in the loan documents. (*See* Note § 3A ("This payment will be interest only for the first 120 months, and then will consist of principal and interest."); *id.* § 3B ("My monthly payment will be in the amount of US $1,860.42 for the first 120 months of this Note, and thereafter will be in the amount of $2,610.88.")); Lamas Dec. Ex. I (Deductions from Check) at 54 (listing a discount fee at "0.000%" and an origination fee at "1.0000%").) Ms. Massey does not deny that these terms were included in the loan documents. (*See generally* Resp.; Massey Dep. at 21 (agreeing that the Deductions from Check explained the discount fee).) As such, Ms. Massey should have discovered the salient facts regarding this aspect of her claim when she executed the Note. "[A] party to a contract which he has voluntarily signed will not be heard to declare that he did not read it, or was ignorant of its contents." *Nat'l Bank of Wash. v. Equity Investors*, 506 P.2d 20 (Wash. 1973).

This court previously declined to apply the discovery rule to Ms. Massey's other claims predicated on the terms of the Loan and on Bank of America's conduct when processing the loan. (*See* 2/13/13 Order at 7-8.) The court's prior reasoning stands. Ms. Massey has raised no facts or evidence showing that she is entitled to pursue a CPA claim premised on events that occurred at the time of the Loan's origination.[2] *See Howard v.*

---

[2] The Washington Supreme Court's holding that characterizing MERS as a beneficiary to a Deed of Trust presumptively meets the first element of a CPA claim did not occur until 2012. *See Bain v. Metro. Mortgage Grp., Inc.*, 285 P.3d 34, 51 (2012). Therefore, out of an abundance of caution, the court

ORDER- 7

# Case 2:12-cv-01314-JLR Document 68 Filed 12/23/13 Page 8 of 18

*Countrywide Home Loans, Inc.*, C13-0133JLR, 2013 WL 1285859 (W.D. Wash. Mar. 26, 2013) (finding no basis for tolling a CPA claim premised on statements made in the loan papers).

**D.  Authority to Foreclose**

Ms. Massey argues that Bank of America did not possess the authority to initiate nonjudicial foreclose proceedings on the Property for various reasons, the primary of which is the characterization of MERS as the beneficiary on the Deed of Trust. Essentially, Ms. Massey seeks to shoehorn facts supporting her dismissed claim for violations of Washington's Deed of Trust Act into her sole remaining claim under the CPA.  Specifically, Ms. Massey argues that the Assignment of the Deed of Trust to Bank of America was void, that the Appointment of Northwest Trustee as successor trustee was void, and that Bank of America did not hold the Note when it initiated foreclosure.  (Am. Compl. ¶¶ 3.14-3.15, 3.17-3.20.)  Ms. Massey concludes that, as a result, those documents and the initiation of foreclosure were unfair or deceptive acts under the CPA.

**1.  Bank of America Held the Note**

Ms. Massey's allegations that it was unfair or deceptive for Bank of America to foreclose on the Property have no basis in fact.  Ms. Massey admits—and the evidence in the record confirms—that she defaulted on her Loan and remain in default.  (Massey Dep. at 30; 59.)  Washington state law is clear that a "person entitled to enforce" an instrument includes "(i) the holder of the instrument . . ."  and that "[a] person may be

---

also addresses Ms. Massey's claims predicated on MERS' presence on the Deed of Trust in Section III.E below.

ORDER- 8

entitled to enforce the instrument even though the person is not the owner of the instrument." RCW 62A.3-301.

Here, the record shows that Bank of America was the holder of the Note when the Assignment and Appointment were recorded in December 2010 and when the foreclosure proceedings were initiated in May 2012. The Assistant Vice President for the Operations Team Manager at Bank of America, Ms. Maria Lamas, reviewed the loan files and servicing records for Ms. Massey's loan. (Lamas Dec. ¶¶ 1-2.) She confirms that "BANA [Bank of America], as successor by merger to Countrywide Bank, FSB, and BAC Home Loans Servicing, LP . . . held the original Note on December 1, 2010 when the Assignment of the Deed of Trust and Appointment of Successor Trustee were recorded, and possessed the authority to enforce the Note and Deed of Trust on behalf of Freddie Mac pursuant to Freddie Mac's servicing guidelines." (*Id.* ¶ 17.) She also confirms that "BANA [Bank of America]. . . held the original Note on May 25, 2012, at the time the Notice of Trustee's Sale was recorded." (*Id.* ¶ 18.)

The mere fact that Freddie Mac owned the Note which Bank of America held and enforced on Freddie Mac's behalf does not render the foreclosure or assignment deceptive. It is well-established that one party may hold and enforce a note on behalf of a second party, and courts have consistently upheld Freddie Mac's practice of doing so. *See, e.g.*, *Corales v. Flagstar Bank, FSB*, 822 F. Supp. 2d 1102, 1107 (W.D. Wash. 2011) (finding that although Freddie Mac owned the loan at issue, "Flagstar is the holder of the Note with the right to enforce it and the corresponding Deed of Trust"); *In re Reinke*, No. BR 09-19609, 2011 WL 5079561 (Bankr. W.D. Wash. Oct. 26, 2011) ("[A]t the time

ORDER- 9

foreclosure commenced under the Shoreline Deed of Trust, Freddie Mac was the *owner* of the Shoreline Note. The issue of ownership, however, is largely immaterial to the issues before the Court. Because under Washington law the focus of the analysis is on who is the *holder* of the note, and thus the *beneficiary* under the [Deed of Trust Act]."); *Zalac v. CTX Mortgage Corp.*, No. C12-01474 MJP, 2013 WL 1990728 (W.D. Wash. May 13, 2013) (finding a failure to state a CPA claim because "Chase is the holder of the note as a matter of law. Further, despite the sale of Plaintiff's loan to Fannie Mae, Chase alerted Plaintiff that it remained servicer of his loan and was authorized to handle any of Plaintiff's concerns.")

Ms. Massey attempts to create an issue of fact by submitting a declaration claiming that Freddie Mac, not Bank of America, was the holder of the Note "very close to the time" that the Appointment and Assignment were executed. (*See* Massey Dec. (Dkt. # 63-2) ¶ 5.) But Federal Rule of Civil Procedure 56 makes clear that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56 (c)(4). Ms. Massey simply has no personal knowledge as to which bank held the Note as of December 2012. As such, her declaration cannot create a material issue of fact.

Neither do the other documents cited in Plaintiff's response create an issue of fact. The letter Ms. Massey received from Bank of America in December, 2011, stating that Freddie Mac "is the current owner of the note" and the print-out of a search of Freddie Mac's website in (apparently) 2013 confirming that Freddie Mac currently owns Ms.

Massey's loan simply do not speak to who held the Note as of the date of the Assignment or foreclosure proceedings. (*See* Elkins Dec. Ex. D, Ex. E.) Similarly, a letter from BAC Home Loans in August, 2010, stating that both BAC Home Loans and the "Noteholder" are entitled to enforce the Note does not speak to who held the Note in December 2010, the date of the Assignment. (*See* Massey Dec. Ex. A.)

In short, Ms. Massey presents no cognizable evidence to rebut Bank of America's proof that Bank of America in fact held the Note and was therefore entitled to foreclose on the Property and assign a successor trustee. A jury "is permitted to draw only those inferences of which the evidence is reasonably susceptible; it may not resort to speculation." *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978). What Ms. Massey demands is speculation. Absent any evidence in Ms. Massey's favor, the law is clear: the foreclosure was not an unfair or deceptive act. *See* RCW 62A.3-301.

Similarly, because Bank of America held the Note at the time it appointed Northwest Trustee as successor trustee, the Appointment is not void. (Lamas Dec. ¶¶ 17, 18.) Washington law defines the beneficiary of a deed of trust as the actual note holder. RCW 61.24.050(2) ("'Beneficiary' means the holder of the instrument or document evidencing the obligations secured by the deed of trust."); *see also Bain*, 175 285 P.3d at 37 ("[O]nly the actual holder of the promissory note . . . may be a beneficiary with the power to appoint a trustee to proceed with a nondudicial foreclosure on real property."). A beneficiary is expressly authorized to appoint a successor trustee. RCW 61.24.010(2) ("The trustee may . . . be replaced by the beneficiary."); *id.* ("[U]pon recording the appointment . . . successor trustee shall be vested with all powers of an original trustee.")

Therefore, the evidence shows that execution of the Appointment was not a deceptive or unfair act under the CPA.

### 2. Assignment of the Deed of Trust

Ms. Massey argues that the Assignment is void and/or deceptive because "MERS was never a beneficiary of this loan and at no time did MERS have the ability to assign beneficial interest in this loan to any other entity." (Am. Compl. ¶ 3.14; *see* Assignment (indicating that BAC Home Loans received "all beneficial interest" in the Deed of Trust).) As discussed in the preceding section, Bank of America's authority to foreclose on the loan stemmed from the fact that Bank of America held the Note. Therefore, Ms. Massey's argument that the Assignment is "without effect and a nullity" (Am. Compl. ¶ 3.14) is beside the point. *See Ukpoma v. U.S. Bank Nat. Ass'n*, 12-CV-0184-TOR, 2013 WL 1934172 (E.D. Wash. May 9, 2013) ("[B]y virtue of being in possession of the note, U.S. Bank is the lawful owner. Its right to receive payment on the note does not depend upon any assignment of the note from MERS.")

Additionally, since the evidence shows that Bank of America held the Note as of the date the Assignment was recorded, the Assignment is not deceptive or misleading in identifying Bank of America as the beneficiary of the Note. *See* RCW 61.24.050(2) ("'Beneficiary' means the holder of the instrument or document evidencing the obligations secured by the deed of trust.") To the extent Ms. Massey argues that the Assignment is deceptive merely because it implies that MERS was a beneficiary to the Note, Ms. Massey is, as the following section demonstrates, unable to show that this allegedly deceptive act caused her any injury.

Ms. Massey also argues that the Assignment is forged or fraudulent because Jeff Stenman, who executed the Assignment, is a "known robo-signer and did not have personal knowledge of the document, nor did he personally sign the document." (Am. Compl. ¶ 3.17; *see also id.* ¶ 6.7) Ms. Massey, however, provides no evidence to support her assertion that Mr. Stenman lacked the authority to sign on behalf of MERS. To the contrary, her theory is flatly contradicted by the record. Mr. Stenmen was an employee of Northwest Trustee. (Stenman Dec. (Dkt. # 49-10) ¶ 1.) The "Agreement for Signing Authority" signed by MERS, Northwest Trustee, BAC Home Loans Servicing, and MERSCORP as of November, 2011 expressly authorizes Northwest Trustee employees to act on behalf of MERS in the execution of mortgage documents. (Agreement (Dkt. # 49-4) at 2.) And Mr. Stenman testifies that he had personal knowledge of Ms. Massey's loan documents and that the Assignment bears his genuine signature. (Stenman Dec. ¶¶ 3-4.)

Ms. Massey provides no legal authority that such a signature would render the Assignment void. To the contrary, courts routinely reject "robo-signing" as a cognizable legal theory. *See, e.g.*, *Bain v. Metro. Mortg. Group, Inc.*, 2010 WL 891585, at *6 (W.D. Wash. 2010) ("There is simply nothing deceptive about using an agent to execute a document, and this practice is commonplace in deed of trust actions.").[3] Accordingly,

---

[3] To the extent that Ms. Massey argues that "robo-signing" rendered the Assignment void or voidable (as opposed to merely deceptive), as a borrower and third party to the transaction, she lacks standing to challenge the validity of the Assignment. *See Ukpoma*, 2013 WL 1934172 at *4 (granting summary judgment on mortgagor's allegations of "robo-signing" for lack of standing to challenge assignment); *Brodie v. Nw. Tr. Servs., Inc.*, 12-CV-0469-TOR, 2012 WL 6192723, at *2 (E.D. Wash.

ORDER- 13

Ms. Massey has not demonstrated that Mr. Stenman's execution of the Assignment constitutes a deceptive or unfair practice under the CPA.

### E. Characterizing MERS as a Beneficiary

Finally, Ms. Massey alleges that, by "designating MERS a 'beneficiary' of the DOT [Deed of Trust], the Lender and MERS provided to Plaintiff false information that they knew or should have known would mislead Plaintiff as to the true identity of the holder of the Note." (Am. Compl. ¶ 3.13.) Under *Bain*, "characterizing MERS as the beneficiary" of a Deed of Trust presumptively meets the first and third elements of the CPA. *Bain*, 285 P.3d at 51. However, "the mere fact MERS is listed on the deed of trust as a beneficiary is not itself an actionable injury." *Id*. at 52. A plaintiff must also establish that "but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury." *Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.*, 170 P.3d 10, 22 (2007). "Personal injuries, as opposed to injuries to 'business or property,' are not compensable and do not satisfy the injury requirement." *Panag v. Farmers Ins. Co. of Washington*, 204 P.3d 885, 899 (Wash. 2009).

Here, Ms. Massey is unable to show any cognizable injury due to MERS' presence on the Deed of Trust or the Assignment.[4] The only evidence Ms. Massey provides in

---

Dec. 12, 2012) (collecting cases dismissing borrower's claims of "robo-signing" for lack of standing to challenge the transaction).

[4] To the extent Ms. Massey argues that characterizing MERS as a beneficiary in the Assignment is also a deceptive act, the court assumes, without deciding, that such a characterization meets the first element of the CPA. The court does not need to reach that issue because Ms. Massey is, as discussed further in this section, unable to show any cognizable injury under the CPA due to MERS' presence on the Assignment.

support of the injury and causation elements is a declaration by Ms. Massey listing the following alleged injuries:

> (1) loss of any equity in my home and the loss of my down payment of $93,000; (2) damage to my credit as a result of having to file bankruptcy to stop a trustee's sale; (3) the time, travel, wear a tear [sic] on my vehicle having to meet with my attorney; (4) bankruptcy fees and costs; (5) attorney fees and costs, of which I have paid only $1,200 to date; (6) personal stress and emotional upset from going into default . . . ; (7) out of pocket expenses for gas, postage, parking to consult with attorneys; (8) distraction and loss of time to pursue business and job opportunities and personal activities due to the necessity of investigating the wrongful conduct of the defendants in processing the foreclosure of my home.

(Massey Dec. ¶ 3.) Ms. Massey further claims in her declaration that she "suffered associated damage to my reputation in the community, damage to my credit history . . . damage to my reputation on social media, damage to my reputation with current and future employers, decreased ability to find new employment, higher interest rates and increased insurance premiums." (*Id.* ¶ 4.)

First, many of these claimed injuries are not cognizable under the CPA. "[D]amages for mental distress, embarrassment, and inconvenience are not recoverable under the CPA." *Panag*, 204 P.3d at 899. As such, Ms. Massey's assertions of "personal stress," "distraction," and "damage to [her] reputation" in various forms are of no consequence. Similarly, litigation expenses incurred to institute a CPA claim do not constitute injury. (*Id.* (citing *Demopolis v. Galvin*, 786 P.2d 804, 809 (Wash. App. 1990).) Therefore, Ms. Massey's laundry list of the costs of instituting this action, including attorney fees, "wear and tear" on her vehicle, and buying postage stamps, is inapposite. *See id.*

ORDER- 15

Second, Ms. Massey fails to provide any evidence connecting her remaining injuries with MERS' presence on the Deed of Trust or Assignment (or, for that matter, with any other action by Bank of America, MERS, or Freddie Mac). Again, Ms. Massey admits that she stopped making payments on the Loan. (Massey Dep. at 30.) Any injuries associated with the foreclosure proceedings, including the bankruptcy filing, "damage to [her] credit," and the alleged "loss of any equity in my home and the loss of my down payment," were caused solely by her own default. *See, e.g.*, *Babrauskas v. Paramount Equity Mortgage*, No. C13-0494RSL, 2013 WL 5743903, \*4 (W.D. Wash. Oct. 23, 2013) (finding no injury under the CPA because "plaintiff's failure to meet his debt obligations is the 'but for' cause of the default, the threat of foreclosure, any adverse impact on his credit, and the clouded title"); *McCrorey v. Fed. Nat. Mortg. Ass'n*, No. C12-1630RSL, 2013 WL 681208 (W.D. Wash. Feb. 25, 2013) (finding no injury under the CPA because "it was [plaintiffs'] failure to meet their debt obligations that led to a default, the destruction of credit, and the foreclosure"); *Peterson v. Citibank, N.A.*, No. 67177-4-1, 2012 WL 4055809 (Wash. Ct. App. 2012) ("[R]egardless of MERS's conduct as the beneficiary under the deed of trust, the Petersons' property would still have been foreclosed upon based on their failure to make payments on the loan.").

The court in *Bain* contemplated that MERS' presence on a Deed of Trust could cause injury under the CPA if it led to confusion regarding or an inability to locate the party accountable for a plaintiff's loan. *Bain*, 285 P.3d at 51; *see also Babrauskas*, 2013 WL 5743903, \*4. But here, Ms. Massey admits that she was not confused about who to submit her loan payments to or who to contact to apply for a loan modification. (*See*

Massey Dep. at 22 ("Q: Were you ever confused as to who to pay your mortgage loan to? A: No."); *id.* (Q: "Did you apply for a modification of your loan? A: Yes. Q: Who did you submit the modification to? A: Bank of America. Q: Were you confused about who you should submit the mortgage modification to? A: No.").)[5] In fact, Ms. Massey did not even see the Assignment until it was made a part of her complaint. (*Id.* at 23.) By that time, most of her alleged injuries had already occurred. Therefore, Ms. Massey fails to provide evidence sufficient to establish an issue of material fact as to whether the presence of MERS on the Deed of Trust or the Assignment was a but-for cause of any injury cognizable under the CPA.

In sum, with respect to all of Ms. Massey's theories, Defendants have either shown that Ms. Massey lacks evidence of essential elements of her CPA claim (causation and injury) or they have produced evidence that negates an essential element of her CPA claim (deceptive act). *See Nissan Fire*, 210 F.3d at 1106. In response, Ms. Massey has failed to produce sufficient evidence to permit a jury to reasonably find in her favor. *See Anderson*, 477 U.S. at 252. Therefore, summary judgment is appropriate.

//

//

//

//

---

[5] (*See also* Massey Dep. at 22 ("Q: Did you ever think that maybe you should make payments to any other entity other than Countrywide and then Bank of America? A: No. Q: Did you ever think you should make payments to MERS? A: No. Q: Did you ever think you should make your payments to anybody else? A: No.").)

IV. CONCLUSION

For the foregoing reasons, the court GRANTS Defendant Bank of America's motion for summary judgment (Dkt. # 54). The court also GRANTS Defendants Freddie Mac and MERS' motion for summary judgment (Dkt. # 59).

Dated this 23rd day of December, 2013.

JAMES L. ROBART
United States District Judge